UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **WISCONSIN PROVINCE OF** | : | |
| **THE SOCIETY OF JESUS** | : | |
| **Plaintiff,** | : | **No. 3:19-mc-00130 (VLB)** |
| | : | |
| **v.** | : | |
| | : | **June 25, 2020** |
| **AUDREY V. CASSEM, ET AL.** | : | |
| **Defendants.** | : | |
| | : | |
| | : | |
| | : | |

## MEMORANDUM OF DECISION ON WISCONSIN PROVINCE OF THE SOCIETY OF JESUS'S MOTION TO COMPEL NON-PARTY GREGORY L. FRICCHIONE, MD TO PRODUCE A DOCUMENT AND PROVIDE DEPOSITION TESTIMONY

Before the Court is Plaintiff Wisconsin Province of the Society of Jesus's (the "Province") motion to compel non-party Gregory L. Fricchione, M.D. to produce a document and deposition testimony withheld on the basis of medical peer review privilege. [Dkt. 2 (Pl. Mem in Supp. Mot. to Compel)]; [Dkt. 15 (Non-Party Mem. in Opp'n)]. For reasons set forth herein, the Court GRANTS the Province's motion to compel.

## Background

In the underlying action, *Wisconsin Province for the Society of Jesus v. Audrey Cassem, et al.*, case no. 3:17-cv-01477, the Province seeks a declaratory judgment that it is entitled to two retirement accounts held by the late Fr. Edwin H. "Ned" Cassem, S.J., M.D. ("Fr. Cassem"). According to the Amended Complaint in the underlying action, Fr. Cassem earned the two retirement accounts while practicing psychiatry for several decades at Massachusetts General Hospital

1

("MGH") and Harvard Medical School. 3:17-cv-01477, Dkt. 44 (Am. Compl.) ¶ 16. In 1976, Fr. Cassem executed beneficiary designation forms designating the Province as the beneficiary of these accounts. *Id.* ¶ 16.

Upon Fr. Cassem's death in July of 2015, the Province learned that Fr. Cassem changed the beneficiary election to designate his late brother's widow, Audrey Cassem, and her son in January of 2011. *Id.* ¶ 22. The Province alleges that Fr. Cassem began showing signs of dementia in December 2010 when he moved into Audrey Cassem's home. *Id.* ¶¶ 24-25. The Province alleges that the subsequent beneficiary designation is invalid due to lack of capacity and/or undue influence. *Id.* ¶¶ 39-48.[1]

In late August 2019, the Province served document and deposition subpoenas on non-party Gregory L. Fricchione, M.D. ("Dr. Fricchione"), who practiced with Fr. Cassem in the Department of Psychiatry at MGH prior to Fr. Cassem's retirement. [Dkt. 15 at 2-3]. During his deposition, Dr. Fricchione testified that in 2008 or 2009, he witnessed Fr. Cassem become intoxicated at a work-related dinner and act inappropriately. [Dkt. 2 at 3]. Dr. Fricchione's concern over Fr. Cassem's "poor judgment" caused him to initiate a peer review investigation into Fr. Cassem's fitness to continue to enjoy full clinical privileges. [*Id.* at 3-4]. Dr.

---

[1] The Amended Complaint also claimed that Fr. Cassem could not have designated Audrey Cassem and her son as beneficiary's because he did not own the accounts because his Jesuit vows required him to renounce any and all property owned or subsequently acquired. *Id.* ¶ 33. The Court dismissed Count 1 and 4 because the Province's breach of contract claim for specific performance is preempted by ERISA and precluded by ERISA's anti-alienation provision. *Wisconsin Province of Soc'y of Jesus v. Cassem*, 373 F. Supp. 3d 378, 383–92 (D. Conn. 2019).

Fricchione testified that before MGH terminates a physician's privileges the physician may voluntarily relinquish them. [*Id.* at 4]. In October 2010, Fr. Cassem's privileges were voluntarily reduced to "Honorary Staff" or "Courtesy Staff," meaning he could no longer admit or care for patients. [Dkt. 16 (Pl. Rep. Br.) at 6] (citing (Dkt. 15, Ex. 1), MGH Medical Staff Bylaws 2.03.9).

Dr. Fricchione withheld a document that was created during the peer review process and declined to answer questions regarding the internal proceedings pursuant to Massachusetts's medical peer review statute. M.G.L. ch. 111 §§ 204 and 205. [Dkt. 15 at 3-4]. The Province then filed a motion to compel Dr. Fricchione to produce the withheld document and submit to deposition questioning about the peer review process in U.S. District Court for the District of Massachusetts. [Dkt. 1]. U.S. District Court Judge Dennis F. Saylor, IV transferred the case to this District pursuant to Fed. R. Civ. P. 45(f). [Dkt. 5].

<u>Discussion</u>

A. <u>Federal Privilege Law Governs the Issues in this Case</u>

As a general rule, federal law governs the existence of a privilege in a civil action in which federal law supplies the rules of decision, and state law governs the existence of a privilege where state law supplies the rule of decision. See Fed. R. Evid. 501. Federal question subject matter jurisdiction exists over the underlying action under 28 U.S.C. § 1331 because the action arises under the Employee Retirement Income Security Act of 1974, as amended, 28 U.S.C. § 1001, *et seq*. Thus, federal common law supplies the rules of decision and governs the existence

3

of a privilege. Fed. R. Evid. 501; *von Bulow v. von Bulow*, 811 F.2d 136, 141 (2d Cir. 1987).

At base, the existence of an evidentiary privilege is in tension with "the fundamental principle that the public ... has a right to every man's evidence." *Univ. of Pennsylvania v. E.E.O.C.*, 493 U.S. 182, 189 (1990)(citations omitted)(alteration in original). Consequently, in federal court, "[p]rivileges should be narrowly construed and expansions cautiously extended." *United States v. Weissman*, 195 F.3d 96, 100 (2d Cir. 1999).

Rule 501 of the Federal Rules of Evidence affords district courts "flexibility to develop rules of privilege on a case-by-case basis." *Univ. of Pa. v. EEOC*, 493 U.S. at 189.

### B. <u>Medical Peer Review Privilege</u>

Nearly all states have adopted some form of medical peer review privilege, which shields disclosure of internal reports prepared by medical staff quality assurance committees at hospitals and other healthcare organizations. Wigmore on Evidence § 7.8.2, Privilege for Medical Peer Review. Ordinarily, a peer review report is a retrospective exercise to identify errors in patient care and opportunities to prevent them in the future. *See Grenier v. Stamford Hosp.*, Inc., No. 3:14-CV-0970 (VLB), 2016 WL 3951045, at *4 (D. Conn. July 20, 2016). As this Court observed in *Grenier*:

> The professional and financial ramifications of medical malpractice claims are severe and trigger the natural human instinct of self-preservation, the impulse to withhold information which could conceivably be perceived as a wrongful act

or omission. The peer review process is designed to give physicians a safe place to fully disclose their conduct and analyze it together with their peers, with the benefit of 20/20 hindsight, in a constructive setting. Its purpose is to improve the medical standard of care, and in so doing, patient care and outcomes. The confidentiality of the peer review process would relieve physicians from the fear of reprisals and the self-preserving instinct to withhold information necessary to achieve the goals of peer review. It would engender candid and probing reflection and collaborative critical evaluation of not only the attending physicians' actions, but of the hospital's policies and procedures as well.

*Ibid.*

Despite wide codification of the privilege among states, there is broad consensus that medical peer review privilege is not recognized under federal common law. *Id.* at 7; Wigmore on Evidence § 7.8.2, Privilege for Medical Peer Review.

C. Whether the Court should recognize medical peer review privilege in this case.

Here, the parties agree that the First Circuit has not recognized medical peer review privilege under federal common law. [Dkt. 2 at 5]; [Dkt. 15 at 4]; *see In re Admin. Subpoena Blue Cross Blue Shield of Mass., Inc.*, 400 F. Supp. 2d 386, 389 (D. Mass. 2005) ("No court in the First Circuit or District of Massachusetts has yet done so under federal law, but Massachusetts state law does recognize the privilege."). The Court agrees. *See also Gargiulo v. Baystate Health, Inc.*, 826 F. Supp. 2d 323, 328 (D. Mass. 2011), *objections overruled*, 279 F.R.D. 62 (D. Mass. 2012)(declining to recognize medical peer review privilege); *Krolikowski v. Univ. of Massachusetts*, 150 F. Supp. 2d 246, 249 (D. Mass. 2001) (same).

When considering whether to recognize a state-law privilege under Fed. R. Evid. 501, courts in the First Circuit apply the two-part test from *In re Hampers*, 651 F.2d

19, 22 (1st Cir. 1981), which first considers whether the state privilege would in fact apply, and then considers whether it is "intrinsically meritorious." To determine whether the privilege is "intrinsically meritorious," the First Circuit employs Wigmore's four-factor balancing test:

> (i) whether the communications "originate in a confidence that they will not be disclosed";
>
> (ii) whether this element of confidentiality is "essential to the full and satisfactory maintenance of the relations between the parties";
>
> (iii) whether the relationship is a vital one that "ought to be sedulously fostered"; and
>
> (iv) whether "the injury that would inure to the relation by the disclosure of the communications [would be] greater than the benefit thereby gained for the correct disposal of litigation."

*Hampers*, 651 F.2d at 22-24.

Here, the Province argues that Dr. Fricchione failed to establish that the withheld information and materials are "necessary to the work product" of the peer review process and subject to the ambit of Mass. Gen. Laws ch. 111 § 205. [Dkt. 2 (Pl. Mem in Supp. Mot. to Compel) 7-8]. In response, Dr. Fricchione argues that the withheld document is an incident report and "integral" to the peer review process that he initiated and performed in accordance with Massachusetts hospital regulations requiring facilities to analyze "professional performance, judgment, and skills" and "mental and physical status." [Dkt. 15 (Non-Party Mem. in Opp'n) at 10-13](citing *Carr v. Howard*, 426 Mass. 514, 524, (1998) and 243 Mass. Code Regs. 3.05(d)(1)-(2). Dr. Fricchione, who was the psychiatry department chair, further argues that his actions were in response to his obligations under MGH's medical staff bylaws, relative to the "evaluation and assistance of providers impaired or

allegedly impaired by reason of alcohol, drugs, physical disability, mental instability or otherwise." [Dkt. 15 (Non-Party Mem. in Opp'n) at 12-13].

On this threshold issue, Dr. Fricchione prevails. Under Massachusetts law, the operative issue is whether the information and records are necessary to comply with risk management and quality assurance programs, not whether the impetus of the report is direct patient care. Mass. Gen. Laws ch. 111 § 205(b). Accordingly, Massachusetts would likely recognize that medical peer review privilege applies to Dr. Fricchione's initial incident report and shields him from testifying about the proceedings of the peer review process that considered whether Fr. Cassem was fit to practice medicine.

The more challenging issue is whether medical peer review privilege is "intrinsically meritorious," particularly, the fourth prong. Courts in the First Circuit considering this issue have also resolved it on the fourth prong of *Hampers*. *Gargiulo v. Baystate Health*, Inc., 826 F. Supp. 2d 323, 327 (D. Mass. 2011), objections overruled, 279 F.R.D. 62 (D. Mass. 2012); *In re Admin. Subpoena Blue Cross Blue Shield of Massachusetts, Inc.*, 400 F. Supp. 2d. at 391; *Martinez v. Hongyi Cui*, No. CV 06-40029-FDS, 2007 WL 9684162, at *3 (D. Mass. Aug. 28, 2007)("Without question the Massachusetts peer review privilege satisfies the first three factors."); *Marshall v. Spectrum Med. Grp.*, 198 F.R.D. 1, 4-5 (D. Me. 2000)(reaching similar conclusion considering Maine's medical peer review privilege statute).

Here, both parties advance rationales that are less compelling than the cases considered by the district courts in the First Circuit and the cases the parties cite. In *Admin. Subpoena Blue Cross Blue Shield of Massachusetts, Inc.*, 400 F. Supp. 2d. at 387, the federal government subpoenaed records from the third-party health insurer concerning its inquiry into a physician, who was also under criminal investigation for health care fraud. There, the district court held that the federal interest in the investigation and enforcement of health care anti-fraud laws outweighed the benefit of maintaining the confidentiality provided by the Massachusetts statute. *Id.* at 392.

In *Gargiulo*, 826 F. Supp. 2d at 327, the district court distinguished between medical malpractice claims and civil rights actions, holding that the federal interest in "fighting discrimination" favored disclosure in an employment action. The district court reached the same conclusion *in Krolikowski v. Univ. of Massachusetts*, 150 F. Supp. 2d 246, 249 (D. Mass. 2001), another employment discrimination case.

Similarly, *Martinez v. Hongyi Cui*, No. CV 06-40029-FDS, 2007 WL 9684162, at *1 (D. Mass. Aug. 28, 2007), was a § 1983 action brought by an emergency room patient. The physician defendant and non-party hospital sought to quash subpoenas seeking medical peer review materials. *Ibid.* There too, without considering the nature of the claims raised, the district court found that the federal interest outweighed the benefit of confidentiality because Congress did not recognize such a broad protection when it enacted the Health Care Quality

8

Improvement Act of 1986, 42 U.S.C §§ 11101-11153, or when it enacted the Patient Safety and Quality Improvement Act of 2005, 42 U.S.C §§ 299b-21-299b-26. *Id.* at 3.

By contrast, in *Tep v. Southcoast Hosps. Grp., Inc.*, No. CIV.A. 13-11887-LTS, 2014 WL 6873137, at *1 (D. Mass. Dec. 4, 2014), the district court held that medical peer review privilege applied in an action alleging violation of the Emergency Medical Treatment and Active Labor Act ("EMTALA"), 42 U.S.C. § 1395dd, which restricts when hospitals may transfer individuals presenting with emergency medical conditions, and state law claims of medical negligence. There, again on the fourth *Hamper* prong, the Court reasoned that EMTALA involves a subject matter that is closely intertwined with patient care decisions and Plaintiff could establish his EMTALA claim through other available evidence. *Tep,* 2014 WL 6873137, at *4.

The Province argues that the cases cited by Dr. Fricchione do not demonstrate that medical peer review privilege has been extended outside of medical malpractice claims or related actions. The Court agrees. In *Grenier*, this Court observed that "[a]lthough there appears to be consensus among lower courts and in other circuits that no federal privilege protects medical peer review materials in civil rights or antitrust actions ... no such consensus has developed in medical or dental malpractice actions. This distinction makes sense, as federal laws which touch upon medical malpractice, like EMTALA and the Federal Tort Claims Act (FTCA), incorporate state law. Indeed, courts have noted EMTALA's intended purpose of supplementing, rather than supplanting, state medical malpractice law .... Thus, it is not surprising that multiple courts have recognized

state peer review privileges under federal law when presented with EMTALA or FTCA claims in addition to state law negligence claims." 2016 WL 3951045, at *3 (citations and quotations omitted).

Considering the facts of this case, the Court holds that the state interest in maintaining peer review privilege does not outweigh the federal interest in a litigant's access to discovery materials.

However, the federal interest advanced by the Province is less compelling than the federal interest in criminal health care fraud investigations, see *Admin. Subpoena Blue Cross Blue Shield of Massachusetts, Inc.*, 400 F. Supp. 2d. at 392, or in vindication of employees' federal civil rights claims, see *Gargiulo*, 826 F. Supp. 2d at 327 and *Krolikowski*, 150 F. Supp. 2d at 249. Here, the federal interest lies in access to third party discovery materials related to a private dispute that does not implicate MGH.

The Province overstates the importance of the privileged discovery materials sought. MGH's peer review process considered "…Fr. Cassem's mental stability, ability to exercise appropriate judgment, and fitness to provide healthcare in 2009 and 2010." [Dkt. 16 (Pl. Repl. Br.) at 3]. But whether Fr. Cassem's former colleagues thought that he was fit to continue to practice medicine is only marginally relevant to whether he was incapacitated for purposes of designating his beneficiaries. Certainly, one need not exhibit a physician's trusted judgment to make a valid beneficiary election. It is nevertheless relevant to the Province's claims under the expansive standard for discovery, as it purports to concern Fr. Cassem's former

colleagues' reports about his changed behavior within a reasonable time prior to the beneficiary election. Fed. R. Civ. P. 26(b)(1); *see* Fed. R. Civ. P. 45 Advisory Committee Notes to 1970 Amendment ("…the scope of discovery through a subpoena is the same as that applicable to Rule 34 and the other discovery rules").

Unlike the cases cited by Dr. Fricchione and other cases discussed by the Court, there are no issues in the action concerning Fr. Cassem's or MGH's delivery of healthcare services, directly or indirectly. Additionally, Dr. Fricchione initiated a review of Fr. Cassem's clinical judgment based on his observation of Fr. Cassem in a non-clinical setting, meaning that the peer review process is further removed from a retrospective evaluation of patient care. Put another way, the delivery of healthcare services at MGH is unaffected by the disposition of Fr. Cassem's retirement accounts because neither Fr. Cassem nor MGH's clinical judgment is at issue in this litigation.

The second policy concern raised by *Grenier,* 2016 WL 3951045, at *4, which is less frequently addressed by caselaw, is the risk that process improvement will be hindered by the reluctance of health care providers to participate in peer review processes out of fear of reprisal if their contents or opinions are disclosed. That concern is absent here as the subject of the peer review process, Fr. Cassem, died several years ago.

Lastly, Dr. Fricchione argues that compelling discovery would have a chilling effect on peer review in general. [Dkt. 15 (Third Party Opp'n.) at 13-15]. The Court disagrees. Here, the discovery materials are subject to a protective order to

preserve confidentiality, thereby "any concerns about discouraging rigorous and honest evaluation of physician conduct by public disclosure have been minimized." *Admin. Subpoena Blue Cross Blue Shield of Massachusetts, Inc.*, 400 F. Supp. 2d at 391. Additionally, as discussed *in passim*, medical peer review privilege is not recognized by federal common law and discoverability in federal cases other than medical malpractice and related actions is common and long-standing. Consequently, physicians who participate in medical peer review processes do so knowing that their actions and reports may be discoverable, albeit in limited circumstances.

With the existing protective order in place, the impact of the disclosure is lessened and the Court finds that the fourth *Hampers* prong tips in favor of the Province. *See Krolikowski*, 150 F. Supp. 2d at 249. "Only if each of these four factors are answered in favor of the party invoking the privilege will the *Hampers* test be satisfied, and the privilege recognized in federal common law." *Tep*, 2014 WL 6873137, at *4 (citing *Gargiulo*, 826 F.Supp.2d at 327). Consequently, the Court finds that Dr. Fricchione has not satisfied his burden to show that medical peer review privilege is "intrinsically meritorious" and the Court declines to recognize it in this case.

## Conclusion

For the above stated reasons, the Court GRANTS the Province's Motion to Compel. The Clerk is directed to close this matter.

IT IS SO ORDERED.

_____/s/_____
Hon. Vanessa L. Bryant
United States District Judge

Dated at Hartford, Connecticut: June 25, 2020

13